Horodova v Richard (2024 NY Slip Op 50430(U))

[*1]

Horodova v Richard

2024 NY Slip Op 50430(U)

Decided on April 15, 2024

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 15, 2024
Supreme Court, Kings County

Nataliya Horodova, Plaintiff,

against
Maurice Richard, Defendant.

Index No. 511731/2018

Sacco & Fillas, LLP, Brooklyn (Ronny Solomon of counsel), for Plaintiff
Pillinger Miller Tarallo, LLP, Elmsford (Kenneth A. Finder of counsel), for Defendant

Aaron D. Maslow, J.

The following numbered papers were read on these motions:
Submitted by Defendant
NYSCEF Doc No. 56: Notice of Motion
NYSCEF Doc No. 57: Affirmation of Robert J. Gironda, Esq. in Support ("Gironda aff")
NYSCEF Doc No. 58: Exhibit A — Police Report
NYSCEF Doc No. 59: Exhibit B — Summons and Complaint, and Answer
NYSCEF Doc No. 60: Exhibit C — Order and Note of Issue
NYSCEF Doc No. 61: Exhibit D — IME Report of Dr. Daniel J. Feuer ("Dr. Feuer report")
NYSCEF Doc No. 62: Exhibit E — IME Report of Dr. Alexandra Carrer ("Dr. Carrer report")
NYSCEF Doc No. 63: Exhibit F — Plaintiff's EBT Transcript
NYSCEF Doc No. 66: Stipulation of Adjournment of Motion ("adjournment stipulation")
Submitted by Court
NYSCEF Doc No. 67: Interim order denying adjournment ("interim order")
NYSCEF Doc No. 68: Interim order denying adjournment (duplicate copy)
 I. Questions Presented
On a defendant's motion for summary judgment dismissing the plaintiff's complaint on the asserted ground of lack of serious injury in a motor vehicle accident, where the defendant relies on medical experts whose reports contradict each other with respect to findings on range of motion testing of the plaintiff on the very same day, has the defendant made out its prima facie case? If said medical experts also differ on the human body norms for range of motion, has the defendant made out its prima facie case? There is little case law on the issue of a party's medical experts contradicting each other with respect to range of motion findings and norms in the context of serious injury summary judgment motions.
On a defendant's motion for summary judgment dismissing the plaintiff's complaint on the asserted ground of lack of serious injury in a motor vehicle accident, where one of the defendant's medical experts opines that findings on her examination were objective, there was no evidence of a pre-existing condition, the plaintiff's injuries were neither resolved nor resolving, and the plaintiff's prognosis was poor, should the defendant's motion be denied and, moreover, should the court search the record and grant summary judgment on the issue of serious injury to the plaintiff if the latter did not interpose opposition and did not cross-move for summary judgment? While no case law exactly on this issue was located, and one case from the Third Department discusses awarding summary judgment to a plaintiff on the serious injury threshold without the plaintiff having moved on the issue, there was at least opposition therein by the plaintiff to a defense motion on serious injury. In the case at bar, there was no written opposition submitted by the plaintiff.

II. Introduction
Plaintiff Nataliya Horodova ("Plaintiff") asserts in this action that on June 28, 2017, she sustained personal injuries while a passenger in a bus rear-ended by a vehicle operated by Defendant Maurice Richard (Defendant) (see NYSCEF Doc No. 59, complaint ¶¶ 4-12; NYSCEF Doc No. 57, Gironda aff ¶ 3).
Defendant moves for summary judgment dismissing Plaintiff's complaint upon the asserted ground that Plaintiff failed to sustain a serious injury per Insurance Law § 5102 (d) (see NYSCEF Doc No. 56, notice of motion), as required by Insurance Law § 5104 (a). The latter provides in pertinent part: "Notwithstanding any other law, in any action by or on behalf of a covered person against another covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of recovery for non-economic loss, except in the case of a serious injury, or for basic economic loss" (Insurance Law § 5104 [a]). " 'Serious injury' means a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined [*2]injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment" (Insurance Law § 5102 [d]).
Summary judgment is a drastic remedy that should be granted only if no triable issues of fact exist and the movant is entitled to judgment as a matter of law (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Andre v Pomeroy, 35 NY2d 361, 364 [1974]).
The issue of whether a claimed injury falls within the statutory definition of "serious injury" is a question of law for the Court, which may be decided on a motion for summary judgment (see Licari v Elliott, 57 NY2d 230 [1982]). Moving Defendant bears the initial burden of establishing, by the submission of evidentiary proof in admissible form, a prima facie case that Plaintiff has not sustained a serious injury from the subject motor vehicle accident as a matter of law, i.e., that there are no material issues of fact (see Toure v Avis Rent A Car Sys., Inc., 98 NY2d 345 [2002]; Gaddy v Eyler, 79 NY2d 955 [1992]). A failure to make such a showing requires denial of the motion, regardless of the sufficiency of the opposing papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851).
If Moving Defendant has made such a showing that Plaintiff Horodova has not suffered a serious injury from the subject motor vehicle accident as a matter of law, the burden shifts to Plaintiff Horodova to submit evidence in admissible form sufficient to create a material issue of fact necessitating a trial (see Franchini v Palmieri, 1 NY3d 536 [2003]; Grasso v Angerami, 79 NY2d 813 [1991]).

III. Court Appearance
Defendant moved on January 31, 2024, for summary judgment dismissing Plaintiff's complaint, claiming a lack of serious injury (see NYSCEF Doc No. 56, notice of motion). Plaintiff failed to submit opposition papers. Rather, on March 28, 2024, there appeared on NYSCEF a stipulation to adjourn the motion "on consent to June 7, 2024" (NYSCEF Doc No. 66, adjournment stipulation). While the filing of the stipulation met the deadline prescribed by this Court's IAS Part 2 Rules, it was bereft of certain information that the Rules require, in particular, "(a) identify which party seeks the adjournment, (b) set forth the good-cause reason for it, (c) provide details of any prior adjournments of the motion, and (d) list future motion calendar dates for other sequenced motions in the case" (IAS Part 2 Rules, Part I, Subpart D, § 3, https://ww2.nycourts.gov/courts/2jd/kings/civil/MaslowRules.shtml). The stipulation, not having complied with these requirements, was rejected and the parties were ordered to appear for oral argument on April 5, 2024, the date on which Defendant's motion was calendared (see NYSCEF Doc No. 67, interim order).
On April 5, 2024, Plaintiff orally applied for an adjournment, which IAS Part 2 Rules do permit: "If an application for adjournment or stipulation of adjournment has not been submitted in the foregoing manner, and counsel still wishes to apply for an adjournment, application shall be made only in person on the scheduled motion date" (IAS Part 2 Rules, Part I, Subpart D, § 2, 
https://ww2.nycourts.gov/courts/2jd/kings/civil/MaslowRules.shtml). This Court denied Plaintiff's application. The issue of serious injury is not a complex one. This Court believes that Plaintiff had an adequate opportunity to interpose opposition, especially considering the lack of [*3]merit of Defendant's motion, as described below. This Court confirms its denial at oral argument of Plaintiff's application for an adjournment (see Shmerelzon v Gravesend Mgt., Inc., 80 Misc 3d 1233[A], 2023 NY Slip Op 51155[U] [Sup Ct, Kings County 2023]). A trial court is entitled to enforce its rules governing practice and procedure before it (see id.; Wade v Khadka, 80 Misc 3d 1222[A], 2023 NY Slip Op 51058[U] [Sup Ct, Kings County 2023]; Brick&Mortar LLC v Momo Sushi Inc., 79 Misc 3d 1239[A], 2023 NY Slip Op 50838[U] [Sup Ct, Kings County 2023]).

IV. Bill of Particulars
On its motion, Defendant failed to submit a copy of Plaintiff's bill of particulars in order to disclose which categories of serious injury Plaintiff has claimed. Nonetheless, this is not an impediment to determining the motion. If neither the plaintiff's summons and complaint nor the bill of particulars specify which category of serious injury applies, the court may search the record and make a determination upon the defendant's motion for summary judgment (see Behrman v Geratowski, 23 Misc 3d 1135[A], 2009 NY Slip Op 511110[U] [Sup Ct, NY County 2009]).
This Court notes, however, that Plaintiff did allege in her complaint that she "sustained severe and permanent personal injuries" (NYSCEF Doc No. 59, complaint ¶ 15). In this Court's view that would suffice to assert the serious injury category of "permanent consequential limitation of use of a body organ or member" (Insurance Law § 5102 [d]; see Epstein v MTA Long Island Bus, 161 AD3d 821 [2d Dept 2018] [description of injuries need not match statutory language verbatim]).

V. Defendant's Evidence on Its Motion & Discussion
In moving for summary judgment, Defendant relies on two IME reports. Both were based on examinations of Plaintiff conducted on September 26, 2023. In a report dated September 26, 2023 and signed October 2, 2023, Dr. Daniel J. Feuer, a Board-certified neurologist, related how Plaintiff claimed to have been "in her usual state of health until June 28, 2017, when while riding as a passenger on a bus, she was involved in a motor vehicle accident. She states she was standing on the bus and subsequently fell, resulting in injuries to the head, neck, lower back, right shoulder and right knee. She denies loss of consciousness. She states she was transported by ambulance to a local hospital emergency room where she underwent routine examination and x-rays. There were no reports of fractures. She was subsequently released for outpatient care. As an outpatient, she was referred by her attorney for multispecialty medical evaluation, diagnostic testing and therapy treatments. She underwent right knee arthroscopic surgery." (NYSCEF Doc No. 61, Dr. Feuer report at 1.)
At the IME, Plaintiff complained to Dr. Feuer of "recurrent right knee pain and left shoulder pain. She denies neck or back pain. She denies any complaints referable to the head. She is currently undergoing a course of physical therapy treatments at a frequency of once per week at a primary physician's office. She does not take pain medications." (Id. at 1.)
After listing the various medical records which he reviewed, Dr. Feuer described his examination (see id. at 2). Using a goniometer and applying the American Medical Association's ("AMA") Guidelines for evaluating permanent impairment, Dr. Feuer found the following on range of motion testing, the degrees attained by Plaintiff being described as [*4]approximate, and listed the normal degrees:
Cervical flexion: 50 degrees (normal is 50 degrees)
Cervical extension: 60 degrees (normal is 60 degrees)
Cervical right lateral flexion: 45 degrees (normal is 45 degrees)
Cervical left lateral flexion: 45 degrees (normal is 45 degrees)
Cervical right rotation: 80 degrees (normal is 80 degrees)
Cervical left rotation: 80 degrees (normal is 80 degrees)
Lumbar flexion: 57 degrees (normal is 60 degrees)
Lumbar extension: 25 degrees (normal is 25 degrees)
Lumbar right lateral flexion: 23 degrees (normal is 25 degrees)
Lumbar left lateral flexion: 23 degrees (normal is 25 degrees) (see id. at 2-3).
Deep tendon reflexes were normal, as were sensation to pinprick, vibration, and light touch. The power was 5/5 in all muscle groups of the upper and lower extremities (see id. at 3).
Dr. Feuer's impression was: "The claimant is an eighty-five-year-old female whose present neurological examination demonstrates a non-physiologic sensory examination in the form of absent proprioception at the distal upper and lower extremities. An individual suffering from loss of proprioception (position sense) would be unable to ambulate independently. It would be non-physiologic to lose proprioception while preserving vibratory sensation in that the sensory fibers travel along the same pathway. [¶] There are presently no objective clinical deficits referable to the central or peripheral nervous system to support her subjective complaints." (Id. at 3.) The diagnoses were "[s]ubjective loss of proprioception (position sense), non-physiologic" and "[n]ormal objective neurological examination" (id. at 3). The conclusion offered by Dr. Feuer was, "Based on a reasonable degree of medical certainty, I believe the claimant, Ms. Nataliya Horodova, does not demonstrate any objective neurological disability. She is neurologically stable to engage in full activities of daily living without restriction." (Id. at 4.)
As mentioned above, Defendant submitted another IME report, this one from Dr. Alexandra Carrer, an orthopedist. Also written September 26, 2023, it recorded her examination of Plaintiff that day — the same day when Plaintiff was examined by Dr. Feuer. Dr. Carrer related that Plaintiff "stated she sustained injuries to her neck, back, left knee, left shoulder, left elbow, left foot, ankle, and head. She denies loss of consciousness. She reports she sustained a laceration to her top of the head. She reports she went to the emergency room of a local hospital where she was examined. She reports she received medication and cane. She was discharged the same day." (NYSCEF Doc No. 62, Dr. Carrer report at 1.)
Plaintiff complained to Dr. Carrer "of pain in her neck, back, left knee, left shoulder, left leg, left hand, left hip, left elbow, left ankle, and head. She reports she has difficulty walking, sleeping, lifting, pushing, and pulling. At present, she states she feels worse." (Id. at 1.)
For past history, Plaintiff denied to Dr. Carrer any prior serious illnesses. She had undergone an unrelated knee surgery. "She denies any similar conditions and prior or subsequent accidents." (Id. at 2.) 
Dr. Carrer listed the various medical records she reviewed and wrote that range of motion testing was performed with a goniometer and the AMA Guidelines for evaluating permanent impairment. She found the following on range of motion testing and listed the normal degrees:
Cervical flexion: 15 degrees (normal is 45 degrees)
Cervical extension: 10 degrees (normal is 45 degrees)
Cervical right lateral bending: 10 degrees (normal is 45 degrees)
Cervical left lateral bending: 20 degrees (normal is 45 degrees)
Cervical right rotation: 45 degrees (normal is 80 degrees)
Cervical left rotation: 50 degrees (normal is 80 degrees)
Thoracolumbar flexion: 50 degrees (normal is 90 degrees)
Thoracolumbar extension: 0 degrees (normal is 25 degrees)
Thoracolumbar right lateral bending: 5 degrees (normal is 25 degrees)
Thoracolumbar left lateral bending: 0 degrees (normal is 25 degrees)
Thoracolumbar right rotation: 45 degrees (normal is 80 degrees)
Thoracolumbar left rotation: 30 degrees (normal is 80 degrees) (see id. at 2-3).
In terms of the left shoulder, which Plaintiff had complained of being injured in the June 28, 2017 accident, Dr. Carrer made the following recordations on range of motion testing: forward elevation 40/180 degrees, compared to 90/180 degrees in the right shoulder; abduction 30/180 degrees, compared to 80/180 degrees in the right shoulder; internal rotation 20/70 degrees, compared to 50/70 in the right shoulder; external rotation 50/90 degrees, compared to 80/90 degrees in the right shoulder; posterior extension 10/60 degrees, compared to 20/60 degrees in the right shoulder; and adduction 5/30 degrees, compared to 10/30 degrees in the right shoulder. Flexion in the left knee, also injured in the accident, was to 120/140 degrees. (See id. at 4.)
Dr. Carrer recorded muscle strength as 4- in 16 locations in the cervical area, 4+ in 12 locations in the lumbar area, 4- or 5- in 12 locations in the upper extremities, and 4+ in four locations in the lower extremities. Reflexes were +1. (See id. at 2-4.)
Dr. Carrer diagnosed cervical sprain, lumbar sprain, right shoulder sprain, and right knee sprain. She opined:
• The claimant's current prognosis is poor.
• Findings on examination are objective.
• Injuries are not resolved or resolving at this time.
• There is no evidence of any pre-existing condition. (Id. at 5.)
What stands out is that Dr. Carrer's findings and norms on range of motion testing in the spine were clearly different from those of Dr. Feuer — and both examined Plaintiff on the same day and applied the AMA Guidelines. The following chart illustrates the different findings on examination the same day and norms:

Movement

Dr. Feuer's findings

Dr. Feuer's norms

Dr. Carrer's findings

Dr. Carrer's norms

Cervical flexion . . . . . . . . . . 

50 degrees

50 degrees

15 degrees

45 degrees

[*5]Cervical extension . . . . . . . . 

60 degrees

60 degrees

10 degrees

45 degrees

Cervical right lateral flexion (bending) . . . . . . . . . . . . . . .

45 degrees

45 degrees

10 degrees

45 degrees

Left right lateral flexion (bending) . . . . . . . . . . . . . . .

45 degrees

45 degrees

20 degrees

45 degrees

Cervical right rotation . . . . .

80 degrees

80 degrees

45 degrees

80 degrees

Cervical left rotation . . . . . .

80 degrees

80 degrees

50 degrees

80 degrees

Lumbar (thoracolumbar) flexion . . . . . . . . . . . . . . . . .

57 degrees

60 degrees

50 degrees

90 degrees

Lumbar (thoracolumbar) extension . . . . . . . . . . . . . . .

25 degrees

25 degrees

0 degrees

25 degrees

Lumbar (thoracolumbar) right lateral flexion   (bending) . . . . . . . . . . . . . . .

23 degrees

25 degrees

5 degrees

25 degrees

Lumbar (thoracolumbar) left lateral flexion (bending) . . . 

23 degrees

25 degrees

0 degrees

25 degrees

[*6]Lumbar (thoracolumbar) right rotation . . . . . . . . . . . . 

Not tested

Not listed

45 degrees

80 degrees

Lumbar (thoracolumbar) left rotation . . . . . . . . . . . . . . . . 

Not tested

Not listed

30 degrees

80 degrees

This Court observes that the differences in findings are markedly contradictory; there is not a single identical finding; Defendants' submission itself establishes that there are material issues of fact concerning Plaintiff's range of motion. But moreover, if one were to apply the 57 degrees in lumbar flexion deemed normal by Dr. Feuer to the 90 degrees deemed normal by Dr. Carrer, there was a 37% reduction in range of motion, which is quite significant (see Gentile v Snook, 20 AD3d 389 [2d Dept 2005] [25% reduction]; O'Sullivan v Atrium Bus Co., Inc., 246 AD2d 418 [1st Dept 1998] [at least 50% and 20% reductions]); Balkaran v Shapiro-Shellaby, 26 Misc 3d 1228[A], 2009 NY Slip Op 52755[U] [Sup Ct, Bronx County 2009] [inconsistent norms between defendants' two examining doctors result in inference of significant limitations when degrees attained per one doctor are compared to higher norms of other doctor; inconsistency unexplained]).
It is also significant that Dr. Feuer did not perform a complete range of motion examination because, unlike Dr. Carrer, he did not test lumbar rotation at all (see Rodriguez v J&K Taxi, Inc., 12 AD3d 434 [2d Dept 2004] [failure to set forth objective tests performed]).
"[I]nconsistencies which appear on the face of plaintiff's own papers prohibit the granting of summary judgment, despite the inadequacy of the opposing papers" (Bank of NY v McLean, 116 AD2d 546, 547 [2d Dept 1986], citing Winegrad v New York Univ. Med. Ctr., 64 NY2d at 853 [1985]). In numerous additional instances involving different causes of action, it has been held that where a party's papers submitted in support of a motion for summary judgment conflict, there is a failure to meet the prima facie burden (e.g. Black v County of Dutchess, 87 AD3d 1097 [2d Dept 2011]; Saaverda v East Fordham Rd. Real Estate Corp., 233 AD2d 125 [1st Dept 1996]; Neuman v Otto, 114 AD2d 791 [1st Dept 1985]; Shur v Unitrin Advantage Ins. Co., 56 Misc 3d 136[A], 2017 NY Slip Op 51011[U] [App Term, 9th & 10th Dists 2017]; Hillcrest Radiology Assoc. v State Farm Mut. Auto Ins. Co., 28 Misc 3d 138[A], 2010 NY Slip Op 51467[U] [App Term, 2d, 11th & 13th Dists 2010]).
A defendant's own contradictory submissions on a serious injury threshold summary judgment motion raise a triable issue of fact (see Martinez v Pioneer Transp. Co., 48 AD3d 306 [1st Dept 2008] [some submitted medical reports and opinions indicate objective tests were negative yet others reflect limitations in range of motion of spine, legs, and back]).
The application of different norms by Defendants' two medical experts in cervical flexion and extension, and lumbar flexion, clearly impugns the accuracy of the range of motion testing to the extent that Defendants' own experts demonstrate another material issue of fact, i.e., what would be the normal degrees (see Cracchiolo v Omerza, 87 AD3d 674 [2d Dept 2011] [no prima facie case due to inconsistent norms by defense's examining doctor in examining plaintiffs]). It [*7]strikes this Court as troubling that two medical doctors would set forth norms for spinal range of motion in a human body at different degrees without any explanation for this discrepancy.[FN1]

The inconsistencies here extend not only to range of motion testing but also to neurological testing in the form of muscle strength. While Dr. Feuer stated that power was 5/5 in all muscle groups of the upper and lower extremities (and did not list the exact locations), Dr. Carrer found different numbers in 44 specific locations — yet more contradictions between the two reports. Dr. Carrer reported reflexes as +1 bilaterally in the upper and lower extremities, while Dr. Feuer described reflexes (DTRs) merely as active and symmetric.
In terms of the quantitative spinal range of motion findings by Dr. Carrer, when they are translated into percentages the result is that there were significant reductions percentage-wise:

Movement

Dr. Carrer's findings

Dr. Carrer's norms

Reduction Percentage

Cervical flexion . . . . . . . . . . . . . . . . . . . . .

15 degrees

45 degrees

67%

Cervical extension . . . . . . . . . . . . . . . . . . .

10 degrees

45 degrees

78%

Cervical right lateral flexion (bending) . . .

10 degrees

45 degrees

78%

Left right lateral flexion (bending) . . . . . .

20 degrees

45 degrees

56%

Cervical right rotation . . . . . . . . . . . . . . . .

45 degrees

80 degrees

44%

[*8]Cervical left rotation . . . . . . . . . . . . . . . . . 

50 degrees

80 degrees

38%

Lumbar (thoracolumbar) flexion . . . . . . . . 

50 degrees

90 degrees

44%

Lumbar (thoracolumbar) extension . . . . . . 

0 degrees

25 degrees

100%

Lumbar (thoracolumbar) right lateral flexion (bending) . . . . . . . . . . . . . . . . . . . .

5 degrees

25 degrees

80%

Lumbar (thoracolumbar) left lateral flexion (bending) . . . . . . . . . . . . . . . . . . . .

0 degrees

25 degrees

100%

Lumbar (thoracolumbar) right rotation . . . 

45 degrees

80 degrees

44%

Lumbar (thoracolumbar) left rotation . . . . 

30 degrees

80 degrees

63%

Thus, in every spinal movement tested by Dr. Carrer, the percentage of limitation exceeded the percentages found in case law to be significant and consequential, the lowest percentage substantiating a serious injury being 20% (see Dufel v Green, 84 NY2d 795 [1995]; Kholdarov v Hyman, 165 AD3d 1087 [2d Dept 2018] [20% deficit in cervical flexion]); Gentile v Snook, 20 AD3d 389 [2d Dept 2005] [75% lumbar range of motion, i.e., 25% limitation]; cf. Cebron v Tuncoglu, 109 AD3d 631 [2d Dept 2013] [10% insignificant]; Il Chung Lim v Chrabaszcz, 95 AD3d 950 [2d Dept 2012] [13% insignificant]; McLoud v Reyes, 82 AD3d 848 [2d Dept 2011] [12% insignificant]; Waldman v Dong Kook Chang, 175 AD2d 204 [2d Dept 1991] [15% minor and not significant].
A defendant expert's own findings may denude the defendant of a prima facie case in support of its motion for summary judgment on the serious injury threshold (see Novembre v Punnoose, 211 AD3d 961 [2d Dept 2022] [defendant's expert conceded that injuries were caused by accident, so burden didn't shift to plaintiff to raise triable issue of fact on causation]; Mullen v Lauffer, 31 AD3d 402 [2d Dept 2006] [IME doctor found continued decreased range of motion two years after accident]; Tchevskaia v Chase, 15 AD3d 389 [2d Dept 2005] [defense doctor [*9]recorded decreased range of motion]; McDowall v Abreu, 11 AD3d 590 [2d Dept 2004] [defendants' doctor found decreased range of motion one and a half years after accident]; Coscia v 938 Trading Corp., 283 AD2d 538 [2d Dept 2001] [defendants' contradictory proof whether injury caused by accident or degenerative disease]; Lombardi v Columbo, 259 AD2d 524 [2d Dept 1999] [defense doctor found cervical right lateral flexors 19 degrees less than on left]).
Multiple problems taint Defendant's proffered expert evidence on his motion for summary judgment herein claiming that Plaintiff failed to establish a serious injury pursuant to Insurance Law § 5102 (d) and § 5104 (a). Defendant's own experts contradicted themselves not only on range of motions findings on the same day of examining Plaintiff but in relating the human body's normal degrees for spinal range of motion. In applying one doctor's finding of 57 degrees in lumbar flexion (deemed normal by him) to the other doctor's standard of 90 degrees, there was a significant, 37% reduction. One doctor found a perfectly healthy Plaintiff while the other found objectively decreased ranges of motion in practically all tested body parts, a poor prognosis, unresolved injuries, and no evidence of a pre-existing condition. The decreased ranges of motion which she found all exceeded the minimums held to be significant pursuant to case law.
Defendant clearly failed to establish its entitlement as a matter of law to summary judgment on the issue of the serious injury threshold applicable to personal injury claims emanating from motor vehicle accidents, without resort to the sufficiency of any opposing papers (see Alvarez v Prospect Hosp., 68 NY2d 320; Winegrad v New York Univ. Med. Ctr., 64 NY2d at 853; Andre v Pomeroy, 35 NY2d at 364; Curiale v Delfavero, 211 AD3d 905 [2d Dept 2022]). Therefore, his motion must be denied.

VI. Searching the Record
The issue of whether a claimed injury falls within the statutory definition of "serious injury" is a question of law for the Court, which may be decided on a motion for summary judgment (see Licari v Elliott, 57 NY2d 230).
CPLR 3212, governing motions for summary judgment, states at the end of subdivision (b): "If it shall appear that any party other than the moving party is entitled to a summary judgment, the court may grant such judgment without the necessity of a cross-motion" (CPLR 3212 [b]). No notice to the non-moving party is necessary, i.e., a court may search the record and award summary judgment to a non-moving party sua sponte (see Kenneths Fine Repairs, LLC v State of New York, 133 AD3d 1181 [3d Dept 2015]). In any event, during oral argument, this Court informed the parties that it was contemplating searching the record to award Plaintiff summary judgment on serious injury based on Dr. Alexandra Carrer's report submitted by Defendant.
Concerning searching the record with the thought of awarding summary judgment to a non-moving party, the Court of Appeals has stated:
We agree with plaintiff, moreover, that the Appellate Division lacked authority to award Hilco, a nonmovant, summary judgment on an issue not presented by the motions.
Resolution of this issue turns on our reading of CPLR 3212 (b), which states that if "it shall appear that any party other than the moving party is entitled to a summary judgment, the court may grant such judgment without the necessity of a cross-motion." [*10]As we held in Merritt Hill Vineyards v Windy Hgts. Vineyard (61 NY2d 106), the Appellate Division has the authority to grant summary judgment in favor of a nonmoving party even in the absence of a cross appeal by that party. That reading of CPLR 3212 (b) is consistent with the laudatory purposes of summary judgment, which promotes efficient case resolution.
The Appellate Division's power to search the record and afford a nonmoving party summary relief is not, however, boundless (see generally, Siegel, NY Prac § 282, at 412 [2d ed]; 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 3212.08, at 32-187 to 32-189). Recognizing that "[a] motion for summary judgment must be addressed to one or more specific causes of action or defenses" (Conroy v Swartout, 135 AD2d 945, 947), the Appellate Divisions have uniformly held that a court may search the record and grant summary judgment in favor of a nonmoving party only with respect to a cause of action or issue that is the subject of the motions before the court (see, e.g., Frank v City of New York, 211 AD2d 478, 479 [1st Dept]; Mercedes-Benz Credit Corp. v Dintino, 198 AD2d 901, 902 [4th Dept]; Marshall v New York City Health & Hosps. Corp., 186 AD2d 542, 543-544 [2d Dept]; Conroy v Swartout, supra [3d Dept]).
The need for such a limitation is obvious. Apart from considerations of simple fairness, allowing a summary judgment motion by any party to bring up for review every claim and defense asserted by every other party would be tantamount to shifting the well-accepted burden of proof on summary judgment motions (see, GTF Mktg. v Colonial Aluminum Sales, 66 NY2d 965, 967-968 [a moving party must assert some basis in support of its summary judgment motion before an opposing party has the burden of producing contrary evidence]). In light of the good sense underlying the unanimous support in the Appellate Divisions for a restriction on a court's power to award summary judgment in favor of a nonmoving party on an issue unaddressed in the summary judgment motions, we adopt that limitation as our own.
(Dunham v Hilco Constr. Co., 89 NY2d 425, 429-430 [1996].)
Unquestionably, the court may search the record to grant summary judgment to a non-moving party entitled to summary judgment (see Maheshwari v City of New York, 2 NY3d 288, 293 n 2 [2004]; Merritt Hill Vineyards v Windy Hgts. Vineyard, 61 NY2d 106, 111 [1984], but may not do so on an issue unrelated to the issues raised in the summary judgment motion (see Vinder v Showbran Leasing & Mgt., 298 AD2d 325, 326 [1st Dept 2002]). Searching the record to grant summary judgment to a non-moving party affords an expedient resolution of a claim in that party's favor once the court has determined the party is entitled to relief (see Merritt Hill Vineyards v Windy Hgts. Vineyard, 61 NY2d at 112). Dismissing a serious injury claim against all defendants when one moving defendant has shown the plaintiff lacks a serious injury, for example, fits within this scheme, because that issue is identical for all defendants and applies with equal force to each (see infra at 12-13).
An example of when a court should not search the record to award summary judgment to a non-moving party due to different issues was presented in Allen v New York City Tr. Auth. (192 AD3d 951 [2d Dept 2021]). The defendants' motion for summary judgment on liability based on the emergency doctrine was denied, and the Court declined the plaintiff's request to search the record and award him summary judgment of the issue of serious injury.
The court in Rodriguez-Pichardo v Patel (2021 WL 6752791 [Sup Ct, Queens County, [*11]Sept. 15, 2021, No. 713707/2019], declined that branch of plaintiff's opposition to the motion by a defendant for summary judgment on serious injury which sought summary judgment in her favor on certain serious injury categories after the court denied the said defendant's motion predicated on another category.
While a gap in treatment became evident from a review of the plaintiff's opposition to the defendant's summary judgment motion, the court in Perilla v Akanda (14 Misc 3d 555 [Sup Ct, Bronx County 2006]), declined to search the record to award summary judgment to the defendant on certain categories of serious injury; "CPLR 3212 (b) simply does not authorize the court to grant summary judgment to the moving party, on an unaddressed basis, by searching the record" (id. at 560 [emphasis in original]).
In a situation close to the one at hand, in Mora-Garcia v Lali Ny, Inc. (2015 WL 7291030 [Sup Ct, NY County, Oct. 22, 2015, No. 306067/2011]), the court sympathized with the plaintiff's request to search the record and accord him summary judgment, even as the defendant's expert, Dr. Lisa Nason, provided different norms for range of motion testing in her two IME reports. However, the court did not grant him summary judgment, noting that he did not cross-move for the relief:
Plaintiffs have not served notice of a cross motion for summary judgment, however they request that this Court "search the record" and grant them judgment as a matter of law. Under CPLR 3212 (b), it is within the court's power to grant such relief without the necessity of such a cross motion. It should be noted, defendant's proofs leave much to be desired. By moving for summary judgment, a defendant must be prepared for the possibility of the motion boomeranging back in the manner suggested by the plaintiffs. It is clear to this Court that defendants' motion fails in making a prima facie showing for entitlement to the requested relief. Consequently, turning this Court's attention towards what remains regarding factual disputes, the defendants here tread precariously close to the kind of summary elimination they sought to impose on the plaintiffs.
It has been said that negligence cases do not generally lend themselves to resolution by summary judgment (Villoch v. Lindgren, 269 AD2d 271, 272 [1st Dept 2000]). Inferences may be reasonably drawn that differ regarding even facts that are not in dispute. In this instance, this Court must refrain from supplanting the role of the jury with its judgment, however tempting that might be. This is especially true where the details of the particular injuries require close comparison with strict legal standards. As questions remain regarding whether plaintiffs have met the serious injury threshold, plaintiffs are not entitled to summary judgment.
(Mora-Garcia v Lali Ny, Inc., 2015 WL 7291030, *1-2 [emphasis in original].) In the motion before this Court, Plaintiff not only did not cross-move but she failed to submit papers in opposition to those of Defendant.
In the context of the serious injury threshold, the question of whether to search the record to award summary judgment occurs most frequently when a court is faced with a motion or appeal by one or more defendants but not by all of them, seeking an order dismissing the plaintiff's complaint. Case law is replete with instances where the relief was accorded to the non-moving or non-appealing defendants (e.g. Pom Chun Kim v Franco, 137 AD3d 991 [2d Dept 2016]; Mohamed v Blackowl, 116 AD3d 678 [2d Dept 2014]; Lewars v Transit Facility [*12]Management Corp., 84 AD3d 1176 [2d Dept 2011]; Rovelo v Volcy, 83 AD3d 1034 [2d Dept 2011]; Jason v Danar, 1 AD3d 398 [2d Dept 2003]; Nelson v Distant, 308 AD2d 338 [1st Dept 2003]; Grell v MABSTOA, 288 AD2d 259 [2d Dept 2001]; Reif v Calderaro, 2015 WL 3915904 [Sup Ct, Suffolk County, June 12, 2015, No. 12-36405]; Peralta v The New York City Tr. Auth., 2016 WL 7329757 [Sup Ct, Bronx County, Nov. 1, 2016, No. 350073/2011]).[FN2]

In certain other contexts not present in the instant motion, courts have searched the record. The court in Spikoski v Hub Truck Rental (2007 NY Slip Op 32339 [Sup Ct, Suffolk County 2007]) searched the record to grant summary judgment dismissing the complaint against a plaintiff on the ground that he failed to sustain a serious injury despite the procedural defect in the defendants' cross motion (failing to attach copies of the pleadings). This was affirmed by the Second Department (see Spikoski v HUB Truck Rental, 59 AD3d 517 [2d Dept 2009]). Similarly, in Francis Onorato (2008 WL 644816 [Sup Ct, NY County, Feb. 27, 2008, No. 07-01218-MV]), the court noted that although copies of the pleadings were not included in the papers of a defendant they had been in the papers of two other defendants (accord Capozzola v Ford Credit Titling Trust, 2009 WL 577086 [Sup Ct, Suffolk County, Jan. 14, 2009, No. 05-12158]; Murray v Kalata, 2007 NY Slip Op 32241[U] [Sup Ct, Suffolk County 2005]).
In Cascio v Golden (2007 WL 3235528 [Sup Ct, Suffolk County, July 24, 2007, No. 26734/2004]), where the plaintiff's cross-motion was untimely as being made past the 120-day deadline of CPLR 3212 (a), upon review of the papers filed by the moving defendant and those of plaintiff in opposition, the court searched the record to determine whether the plaintiff should be awarded summary judgment on serious injury (accord Grande v Peteroy, 39 AD3d 590 [2d Dept 2007]).
Unlike in Mora-Garcia, discussed supra at 12, where the plaintiff requested of the court that it search the record, in Kesick v Burns-Leader (2017 WL 11541461 [Sup Ct, Ulster County, Dec. 27, 2017, No. 1032/2015]), there was no such request. The defense expert, a Dr. Seigel, examined the plaintiff therein and provided findings which were inconsistent, denoting minor degenerative disc disease at one level of the cervical spine yet in another part of his report describing the condition as moderate to severe disc space narrowing. Dr. Seigel noted minimal disease at another cervical spine level yet elsewhere described the condition as a herniation with cord compression. In terms of range of motion in the cervical spine, Dr. Siegel found limitations of 60%, 75%, 68.75%, 81.25%, 66%, and 77%. The motion court denied the defendants' motion for summary judgment asserting lack of a serious injury, referring to case law holding that range of motion restrictions as low as 20% are sufficient to establish a serous injury.
The motion court then noted that the plaintiff's doctor, a Dr. Foster, also stated that the plaintiff suffered from cervical limitations which did not exist prior to the subject accident. The court elected on its own to search the record pursuant to CPLR 3212 (b) and found that the plaintiff was entitled to summary judgment on the grounds of there being a serious injury due to a significant limitation of use of the cervical spine. And further, pursuant to Linton v Nawaz (14 NY3d 821 [2010]), it was declared that the plaintiff was entitled at trial to recover for any and all [*13]the injuries proximately caused by the subject accident.
On appeal, the Appellate Division, Third Department, affirmed. It first sustained denial of the defendants' motion for summary judgment: "we agree with Supreme Court that the objective findings in Seigel's report, his attribution of the cervical spine injury to the August 2012 accident, and the indicated diminished range of motion in plaintiff's cervical spine, actually serve to support plaintiff's claim of a serious injury such that defendants' were not entitled to summary judgment dismissing plaintiff's claim of serious injury to his cervical spine" (Kesick v Burns-Leader, 169 AD3d 1313, 1316 [3d Dept 2019]). It then reviewed the motion court's award of summary judgment to the plaintiff: "Although defendants' failure to meet their burden would normally end further inquiry, Supreme Court nevertheless searched the record and granted summary judgment in plaintiff's favor on the threshold issue of serious injury to plaintiff's cervical spine (see CPLR 3212 [b]; Dunham v Hilco Constr. Co., 89 NY2d 425, 429 [1996])" (id. at 1317). After reviewing the findings of the plaintiff's Dr. Foster as well as those of another plaintiff's doctor, Dr. Weiss, the Third Department then held, "Given the objective medical evidence proffered with regard to plaintiff's cervical injuries, including comparison of the preaccident CT scan and postaccident MRI of plaintiff's cervical spine, the quantitative evidence with respect to plaintiff's diminished range of motion and the medical opinions of both Seigel and Foster that such injuries were causally related to the August 2012 accident, we find no error with Supreme Court's determination that plaintiff was entitled to summary judgment on the issue of serious injury under the significant limitation of use category (see Toure v Avis Rent A Car Sys., 98 NY2d at 350; McHugh v Marfoglia, 65 AD3d 828, 829 [2009])" (id. at 1318).
While there was compelling evidence of the plaintiff's having established a serious injury in Kesick in the form of the defendant's Dr. Seigel's own range of motion limitation findings, as supplemented by the plaintiff's doctors' affidavit and report, which justified awarding summary judgment to the plaintiff upon searching the record, the factor of the plaintiff having submitted written opposition to the defendant's motion is not present in the case at bar. This begets the question of whether this Court should award summary judgment to Plaintiff upon searching the record without the latter having submitted written opposition.
In reviewing the evidence submitted by Defendant, this Court could not help but observe that Dr. Carrer's report related in extensive detail Plaintiff's limitations of movement and the doctor's conclusions that they were attributable to the subject motor vehicle accident ("There is no evidence of any pre-existing condition" [NYSCEF Doc No. 62, Dr. Carrer report at 5].). One of the purposes of New York's No-Fault Law, article 51 of the Insurance Law, was to reduce the number of common-law tort actions commenced in accidents involving the use or operation of a motor vehicle (see Oberly v Bangs Ambulance, 96 NY2d 295 [2001]; Walton v Lumbermens Mut. Cas. Co., 88 NY2d 211 [1996]; Montgomery v Daniels, 38 NY2d 41 [1975]). It is with this purpose in mind that the legislature drafted section 5102 (d) of the Insurance Law, which defines "serious injury," to eliminate recovery in a common-law tort action for minor personal injuries (see Zecca v Riccardelli, 293 AD2d 31, 33 [2d Dept 2002]).
Likewise, the converse must be true. If a person sustains a true serious injury in a motor vehicle accident, that person should be afforded the opportunity to present her injuries to a jury for the purpose of assessing the damages to which the person is entitled. A trial on damages should then not be delayed by more, unnecessary motion practice. In a situation where, as here, the defendant proved through his own medical expert that the plaintiff sustained a serious injury in the form of a "permanent consequential limitation of use of a body organ or member" [*14](Insurance Law § 5102 [d]), the court system should not be burdened with a superfluous motion by plaintiff for summary judgment on the issue of serious injury; as it is the court system is struggling to deal with the backlog of cases resulting from the 2020-2022 Covid-19 pandemic. At trial, the Court should not have to undergo the burden of explaining the serious injury concept to the jury and the jury should not have to consider it on the verdict sheet, when Defendant's own expert provided an affidavit substantiating that Plaintiff sustained a serious injury as defined in the Insurance Law.
"Ever since its first appearance in this State by legislative enactment in 1921, summary judgment has offered an effective means for resolving disputes which present only questions of law. (See Paston, Summary Judgment in New York, chs III-VI; Kahn v City of New York, 37 AD2d 520, 521, affd 30 NY2d 690.) '[T]he practicalities of frivolous litigation and court congestion mandate a summary procedure upon the ascertaining that there is no cause of action.' (Senrow Concessions v Shelton Props., 10 NY2d 320, 326.)" (Merritt Hill Vineyards v Windy Hgts. Vineyard, 61 NY2d at 112.) Thus, once a court is presented with a motion for summary judgment, the opportunity is presented to dispose of frivolous defenses, such as one claiming lack of serious injury which possess absolutely no merit.
As noted above, there are numerous decisions granting summary judgment dismissing the complaint against non-moving and non-appealing defendants due to a plaintiff's lack of serious injury; procedural irregularities were set aside. While there would be a more compelling case to grant Plaintiff summary judgment on serious injury had she cross-moved or at least opposed Defendant's motion with written papers (cf. Mora-Garcia v Lali Ny, Inc., 2015 WL 7291030), there is precedent for granting summary judgment to a non-moving plaintiff (e.g. Kesick v Burns-Leader, 2017 WL 11541461, affd 169 AD3d 1313). The instant case presents the unique situation where Plaintiff neither opposed Defendant's motion nor cross-moved for summary judgment. Nonetheless the policy considerations related above and notions of equity compel this Court to search the record and grant summary judgment to Plaintiff on the issue of serious injury. This is the identical issue placed in dispute before the court by Defendant (cf. Allen v New York City Tr. Auth., 192 AD3d 951 [2d Dept 2021]). Defendant proved for Plaintiff that Plaintiff sustained a serious injury: a permanent consequential limitation of use of a body organ or member. Plaintiff is entitled to damages for all injuries to her body parts (see Linton v Nawaz, 14 NY3d 821; O'Neill v O'Neill, 261 AD2d 459 [2d Dept 1999]; Prieston v Massaro, 107 AD2d 742 [2d Dept 1985]).

 VII. Conclusion
IT IS HEREBY ORDERED that DEFENDANT'S MOTION for summary judgment dismissing Plaintiff's complaint on the asserted ground that Plaintiff failed to sustain a serious injury in the subject motor vehicle accident is DENIED.
UPON SEARCHING THE RECORD, IT IS HEREBY ORDERED that PLAINTIFF IS GRANTED summary judgment on the issue of having sustained a serious injury in the form of a permanent consequential limitation of use of a body organ or member; Plaintiff is relieved of the burden of proving a serious injury at trial, and, at any trial on damages, Plaintiff shall be entitled to recover for all injuries proved to have proximately been caused by the June 28, 2017 motor vehicle accident.
E N T E R
HON. AARON D. MASLOW
Justice of the Supreme Court of the State of New York

Footnotes

Footnote 1:It has been this Court's position that the guidelines which a medical expert uses to determine whether ranges of motion are deemed normal or limited must be reported in addition to which device was used to perform measurements (such as a goniometer or inclinometer) inasmuch as there are several guidelines promulgated by different authorities (e.g. Ramos v Keenan, 2017 NY Slip Op 31286(U), *1 [Sup Ct, NY County 2017] [AMA Guidelines 5th Edition, NYS guidelines, McBride's Guide to Permanent Disability]; Roldan v Perro, 2013 WL 9972883, *2 [Sup Ct, Nassau County, May 23, 2013, No. 16464/2011] [AMA Guidelines]; Davis v Rivers, 2010 WL 3738550 [Sup Ct, Nassau County, Sept. 15, 2010, No. 19190/2008] [Physical Examination of the Spine and Extremities by Dr. Hoppenfeld, American Medical Association Guidelines to the Evaluation of Permanent Impairment, Campbell's Operative Orthopedics]), a fact noted by this Court in Wilks v Baichans (79 Misc 3d 1226[A], 2023 NY Slip Op 50731[U] [Sup Ct, Kings County 2023]). Doctors do not always agree on the norms (see Layne v Drouillard, 65 AD3d 1197 [2d Dept 2010, Spolzino, J., dissenting]), yet both Dr. Feuer and Dr. Carrer cited to the AMA Guidelines and set forth different norms, which troubles this Court.

Footnote 2:While the Appellate Division may search the record and grant summary judgment, the Court of Appeals lacks jurisdiction to do so (see JMD Holding Corp. v Congress Financial Corp., 4 NY3d 373 [2005]; Merritt Hill Vineyards Inc. v Windy Hgts. Vineyard, 61 NY2d 106, 110-111 [1984].)